IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

Case No. 2:23-cv-07155-BWA-DPC

PREPARED FOOD PHOTOS, INC. f/k/a
ADLIFE MARKETING &
COMMUNICATIONS CO., INC.,

      Plaintiff,

v.

ANNADELE, INC. d/b/a ANNADELE'S
PLANTATION,

      Defendant.

_____

## PLAINTIFF'S MOTION FOR DEFAULT FINAL JUDGMENT AND MEMORANDUM IN SUPPORT

Plaintiff Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. ("Plaintiff"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 55(b)(2), hereby moves for entry of a Default Final Judgment against defendant Annadele, Inc. d/b/a Annadele's Plantation ("Defendant"), and states as follows:

### PROCEDURAL SUPPORT FOR DEFAULT FINAL JUDGMENT

1.      On December 4, 2023, Plaintiff filed its Complaint in this action.

2.      On December 6, 2023, Defendant was served with a copy of the Summons and Complaint in this action.  See D.E. 5.

3.      On January 26, 2024 (following expiration of Defendant's response deadline), Plaintiff filed its Motion for Clerk's Default against Defendant. See D.E. 9.

4.      On January 26, 2024, the Clerk entered a Clerk's Default against Defendant.  See D.E. 10.

**FACTUAL SUPPORT FOR DEFAULT FINAL JUDGMENT**[1]

**I.      Plaintiff's Business and History**[2]

10.      Plaintiff is in the business of licensing high-end, professional photographs for the food industry.

11.      Plaintiff operates on a subscription basis whereby it charges its clients (generally, grocery stores, restaurant chains, food service companies, etc.) a ***minimum*** monthly fee of $999.00 ([https://preparedfoodphotos.com/featured-subscriptions/](https://preparedfoodphotos.com/featured-subscriptions/)) for access to its library of professional photographs.

12.      Plaintiff's standard licensing terms require a minimum of a twelve (12) month licensing commitment ([https://preparedfoodphotos.com/terms.of.use.php](https://preparedfoodphotos.com/terms.of.use.php)) to avoid scenarios whereby a licensee pays for one (1) month of access, downloads the entire library of 20,000+ photographs, and immediately terminates the license agreement.

13.      Plaintiff's business model relies on its recurring monthly subscription service and the income derived therefrom such that Plaintiff can continue to maintain its impressive portfolio.

14.      Plaintiff has numerous paying subscribers paying monthly subscription fees ranging from $999.00/month to $2,500.00/month (depending on the number of 'end users' for which Plaintiff's photographs are to be used).   Generally stated, the bulk of Plaintiff's subscribers are professional ad agencies that develop weekly ads/grocery store websites for their own 'end users' (i.e., grocery stores, meat/dairy sellers, etc.).

---

[1]      "Where a defendant has defaulted, the factual allegations in the complaint are taken as true, except regarding damages." Indeed, Inc. v. Khan, No. A-21-CV-356-RP, 2022 U.S. Dist. LEXIS 55435, at *3 (W.D. Tex. Jan. 31, 2022); See Jackson v. FIE Corp., 302 F.3d 515, 525 n.29 (5th Cir. 2002) ("after a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages,"…).

[2]      The facts set forth herein are based upon the well-pleaded allegations of the Complaint and the May 2, 2024, Declaration of Rebecca Jones (the "Jones Decl."), a true and correct copy of which is attached hereto as Exhibit "A."

15.     Plaintiff owns each of the photographs available for license on its website and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers.  To that end, Plaintiff's standard terms include a limited, non-transferable license for use of any photograph by the customer only.  Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II.     The Work at Issue in this Lawsuit

16.     In 1998, a professional photographer employed and/or contracted by Plaintiff created a photograph of cooked lobster tails titled "LobsterTail002" (the "Work"). A copy of the Work is displayed below:



17.     The Work was registered by Plaintiff (pursuant to a work-for-hire agreement with the author that transferred all rights and title in the photograph to Plaintiff) with the Register of Copyrights on October 31, 2016 and was assigned Registration No. VA 2-020-970. A true and correct copy of the Certificate of Registration pertaining to the Work is attached to the

Complaint as Exhibit A thereto.

18.   Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

### III.   Defendant's Unlawful Activities

19.   Defendant is a bed and breakfast with a New Orleans style restaurant on its premises. It is also a destination to host wedding ceremonies.

20.   Defendant advertises/markets its business through its website (https://annadeles.com/), social media (e.g., https://www.facebook.com/annadelesplantation/), and other forms of advertising.

21.   On August 24, 2021 (after the above-referenced copyright registration of the Work), Defendant displayed and/or published the Work on its website, webpage, and/or social media (at https://business.facebook.com/annadelesplantation/photos/4399819490079878):



22.   A true and correct copy of the screenshot of Defendant's website, webpage, and/or social media, displaying the copyrighted Work, is attached to the Complaint as Exhibit B thereto.

4

23.     Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with its business or for any other purpose.

24.     Defendant utilized the Work for commercial use.

25.     Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

26.     Plaintiff's primary business is the creation of new photo/video content and licensing such content to supermarkets, ad agencies, etc.  To ensure that Plaintiff's valuable intellectual property is not being misappropriated (which necessarily lowers the value thereof), Plaintiff employs a full-time paralegal and other staff that each (when time permits) perform reverse-image searches using Google Images (https://www.google.com/imghp?hl=en) and review grocery store electronic/print ads to determine whether Plaintiff's images are being misused.

27.     Plaintiff's staff generally searches using a rotating sub-set of photographs that may be illegally/improperly published by non-licensees.  Given the volume of Plaintiff's library, Plaintiff was reasonably unable to discover Defendant's improper use of the Work at issue in this lawsuit prior to the aforementioned date of discovery.

28.     Through its ongoing diligent efforts to identify unauthorized use of its photographs, Plaintiff first discovered Defendant's unauthorized use/display of the Work in December 2021.

29.     Following Plaintiff's discovery of Defendant's infringement, Plaintiff retained counsel to pursue this matter. On September 1, 2022, Fernando Baez (a staff member employed by CopyCat Legal PLLC, a law firm that represented Plaintiff prior to the filing of this action

and continues to assist Plaintiff's counsel in this action) sent (via Federal Express and e-mail) one (1) infringement notice to Defendant to notify it of the impermissible use of Plaintiff's Work.[3] On September 19, 2022, after receiving no response from Defendant, Mr. Baez sent a follow-up email to Defendant. Mr. Baez also called Defendant, but there was no answer, so he left a voicemail. On October 3, 2022, after receiving no response from Defendant, Mr. Baez called Defendant again, but there was no answer, so he left another voicemail. On October 27, 2022, after receiving no response from Defendant, Mr. Baez called Defendant again, but there was no answer, so he left another voicemail. On November 2, 2022, after receiving no response from Defendant, Mr. Baez called Defendant again, but there was no answer, so he left another voicemail. On this date, Mr. Baez checked Defendant's Facebook page, which appeared to still be active and the business still open. On November 17, 2022, after receiving no response from Defendant, Mr. Baez sent another follow-up email to Defendant. On November 28, 2022, after receiving no response from Defendant, Mr. Baez called Defendant again. This time, Mr. Baez received an automated message stating that Defendant would be closed Thanksgiving weekend and would reopen Wednesday, November 30, 2022 (indicating the business was still active). On December 1, 2022, after receiving no response from Defendant, Mr. Baez called Defendant again, but there was no answer, so he left another voicemail. Mr. Baez also sent another follow-up email. On December 12, 2022, after receiving no response from Defendant, Mr. Baez sent Defendant another email and Federal Express wherein he indicated Plaintiff would be filing a lawsuit, given that Defendant was continuing to ignore the outreach. On December 12, 2022, Mr. Baez received an email from "Trisha" at Defendant who stated the following:

> Before you spend any money pursuing the claim of a picture that

---

[3]     The facts set forth herein are based upon the May 3, 2024, Declaration of Fernando Baez (the "Baez Decl."), a true and correct copy of which is attached hereto as Exhibit "B."

was purportedly taken from the internet you should know that the restaurant is already cast in judgment for numerous unpaid creditors as well as for current debts that haven't yet reached that point. Please check with the online records at the 22nd Judicial District Court in St. Tammany Parish, Louisiana. If it is a judgment you want you can have one. Stand in line. We have no insurance of any kind. In fact, we can't make payroll. Don't take my word for it. Verify it. Even if I had a dollar to give you (which I don't), in good conscience, I would either give it to the former employees that are holding NSF checks or to the former vendors, many of them small businesses, that were never paid for their products. Take this all for what it's worth and do as you see fit.

To date, no further response has been received from Defendant and/or Trisha by either CopyCat Legal PLLC and/or undersigned counsel.

30.     ***To this day***, despite communication with Defendant, the Work is still displayed and hosted on Defendant's website, webpage, and/or social media (at https://www.facebook.com/annadelesplantation/photos/4399819490079878).

## **ARGUMENT**

### I.     **Applicable Legal Standards**

Federal Rule of Civil Procedure 55 sets forth two steps to obtain a default judgment. First, when a defendant fails to plead or otherwise defend a lawsuit, the clerk of court may enter a clerk's default.  Fed. R. Civ. P. 55(a).  Second, after entry of the clerk's default, the Court may enter default judgment against the defendant so long as the defendant is not an infant or incompetent. Fed. R. Civ. P. 55(b)(2). The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established. Nishimatsu Constr. Co. v. Hous. Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).

The Court must review the sufficiency of the complaint before determining if a moving party is entitled to default judgment. See Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515

F.2d 1200, 1206) (5th Cir. 1975). "While a complaint . . . does not need detailed factual allegations," a plaintiff's obligation to show its entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). If the admitted facts are enough to establish liability, the Court must then ascertain the appropriate amount of damages and enter final judgment in that amount.  See Nishimatsu, 515 F.2d at 1206. An evidentiary hearing on damages is not required by Rule 55, and it is within the Court's discretion to choose whether to hold such a hearing. See Fed. R. Civ. P. 55(b)(2); UnitedHealthcare Ins. Co. v. Holley, 724 Fed. Appx. 285, 289 (5th Cir. 2018); James v. Frame (In re frame), 6 F.3d 307, 311 (5th Cir. 1993).

**II.      Plaintiff is Entitled to Judgment on its Claim for Copyright Infringement**

The Copyright Act, 17 U.S.C. § 501(a), provides that "(a)nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 122 [17 U.S.C. §§ 106-122] or of the author as provided in section 106A(a) [17 U.S.C. § 106A(a)]... is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501(a). "A claim of copyright infringement has two elements: (1) ownership of a valid copyright; and (2) copying constituent elements of the work that are copyrightable." Geophysical Serv. v. TGS-NOPEC Geophysical Co., 850 F.3d 785, 791 (5th Cir. 2017).

**1.      Plaintiff Owns a Valid Copyright**

With respect to the first element, a certificate of registration "made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court." 17 U.S.C. § 410(c).  Here, the Complaint alleges that the Work was not registered until later than 5 years from first publication.  The registration certificate therefore does not constitute "prima facie"

evidence of validity, but it certainly is evidence enough to satisfy the first element of an infringement claim.  See, e.g., Ultra-Images, LLC v. Franclemont, No. 05-60538-CIV, 2007 U.S. Dist. LEXIS 93610, at *11-12 n.3 (S.D. Fla. Dec. 20, 2007) ("Defendants also urge this Court to find invalidity of the registration because the registration was made over five years after the Jesse Portrait was published…. Based on the record at this stage in the proceeding, the Court cannot find, as a matter of law, that the certificate of registration is invalid."); Lifetime Homes, Inc. v. Residential Dev. Corp., 510 F. Supp. 2d 794, 801 (M.D. Fla. 2007) ("Although Plaintiff did not file the copyright registration within the five year time period, Plaintiff has produced the certificate of registration for the Model A and Defendants have not pointed to any evidence indicating that Plaintiff's certificate of registration is not valid. Further, Defendants make no argument nor present any evidence to support a finding that Plaintiff does not in fact own the copyright for the Model A plans.").  As succinctly explained in Southall v. Force Partners, LLC, No. 1:20-cv-03223, 2021 U.S. Dist. LEXIS 164680, at *7 (N.D. Ill. Aug. 31, 2021):

> The last sentence is crucial here: Section 410(c) confers discretion on the court on how to treat a certificate obtained five years after publication. In other words, the statute mandates a presumption of validity for pre-five-year certificates, but the statute does not **_forbid_**[4] a presumption of validity for post-five-year certificates. Post-five-year certificates are still eligible to qualify as prima facie evidence of a valid copyright. Yurman Design, Inc. v. Golden Treasure Imps., Inc., 275 F. Supp. 2d 506, 515-16 (S.D.N.Y. 2003) (holding that late registrations can be considered prima facie evidence of valid copyright); Telerate Sys., Inc. v. Caro, 689 F. Supp. 221, 227 n. 7 (S.D.N.Y. 1988) (explaining "[e]ven if the certificate were ... issued more than five years after the actual date of first publication, the court would be inclined to give the certificate the weight of prima facie evidence, as permitted under Section 410(c)."). **_In any event, the strength of the presumption is not a matter that should be resolved at the pleading stage. The parties must develop facts in discovery before the certificate's_**

---

[4]      Emphasis in original.

*evidentiary weight can be presented to the Court for decision.*[5]
The copyright-infringement claim survives.

Here, Plaintiff registered the Work pursuant to 17 U.S.C. § 411(a) with the Register of Copyrights as set forth above.  By virtue of its default, Defendant does not have any right to challenge Plaintiff's registration/ownership of a valid copyright.

### 2.     Defendant Copied the Work

The copying element of an infringement claim has two components. General Universal Sys. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004). First, a plaintiff must demonstrate that the defendant copied the plaintiff's work as a factual matter.  Id. at 142. Second, the plaintiff must establish "substantial similarity" between the allegedly infringing work and the elements of the copyrighted work that are legally protected.  Id.

Here, the screenshots of Defendant's website, webpage, and/or social media unequivocally show Defendant's copying of the Work. Defendant's default further constitutes an admission as to such copying. There is no factual or subjective issue of "substantial similarity" here as Defendant copied and published a duplicate image of the Work. Thus, Defendant undisputedly copied Plaintiff's copyrighted work and a Final Default Judgment should be entered against Defendant on Count I of the Complaint.

## III.   Defendant's Infringement was Willful

Willful infringement occurs when "the defendant has recklessly disregarded the plaintiff's rights, or upon a showing that the defendant knew or should have known it infringed upon a copyrighted work." Graper v. Mid-Continent Cas. Co., 756 F.3d 388, 394 (5th Cir. 2014) (citing Lance v. Freddie Records, Inc., No. 92-7561, 1993 WL 58790, at *2 (5th Cir. 1993). Moreover, this Court may infer that Defendant willfully infringed Plaintiffs' copyrights because

---

[5]     Emphasis added.

of Defendant's default.  See Doctor's Assocs. v. Vinnie's Smokehouse/Meat Specialty, LLC, No. 10-3661, 2011 U.S. Dist. LEXIS 75375, at *4 (E.D. La. July 13, 2011) ("Willful copyright infringement is considered proven when the defendant has defaulted."); US Green Bldg. Council, Inc. v. Wardell, No. 3:14-CV-01541-M-BH, 2016 U.S. Dist. LEXIS 89457, at *14 (N.D. Tex. June 17, 2016) ("Because Defendant's conduct was willful and he admitted that he acted knowingly and intentionally by virtue of his default, an award of statutory damages against Defendant in the maximum amount is warranted."). One of the court's goals when awarding increased damages in the context of Section 504(c)(2) is "to deter future violations of the copyright laws, with an eye to proving that it 'costs less to obey the copyright laws than to violate them.'" Lance v. Freddie Records, Inc., 1993 U.S. App. LEXIS 40601, at *6 (5th Cir. 1993).  "Deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." Cable/Home Communication Corp. v. Network Productions, 902 F.2d 829, 851 (11th Cir. 1990) (internal quotation omitted).

Indeed, to this date, Defendant still currently infringes (willfully) on the Work with it still being publicly displayed (as of the filing date of the Motion) on Defendant's website, webpage, and/or social media, demonstrating an utter and complete disregard to Plaintiff's request to remove the infringing photographs, and the Copyright Act.  This constitutes an ongoing and willful infringement. See, e.g. Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No. 22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *10 (S.D. Fla. Dec. 19, 2022) ("Defendant's refusal to remove Plaintiff's Work after nearly a dozen communication attempts demonstrates Defendant's willfulness."); Burch v. Nyarko, 2007 U.S. Dist. LEXIS 55345, at *3 (S.D.N.Y. July 30, 2007) ("Nyarko's conduct throughout this action – reflected in his refusal to talk to Plaintiff, to remove the photographs promptly from the website, and to respond to this suit – supported a

11

finding of willfulness under 17 U.S.C. § 504©(2)."); <u>Schwabel v. HPT Serv., LLC</u>, No. 3:17-cv-791-J-34JBT, 2018 U.S. Dist. LEXIS 171820, at *10 n.8 (M.D. Fla. Sep. 6, 2018) ("Because Defendant failed to remove the Photograph from the subject sites after Plaintiff demanded that he do so, the undersigned recommends that the infringements were willful."); <u>Garvey v. Buzznick, LLC,</u> No. 2:22-cv-00400-DBB, 2023 U.S. Dist. LEXIS 96680, at *7 (D. Utah June 1, 2023) ("[C]ourts have found willful infringement where a party informed defendants of potential infringement and the defendants took no action."); <u>Lions Gate Films Inc. v. Saleh,</u> No. 2:14-CV-06033-ODW-AGR, 2016 U.S. Dist. LEXIS 206242, at *8-9 (C.D. Cal. March 24, 2016) ("The Court finds that Defendants' inaction after learning of their specific infringing content is sufficiently indicative of their willful infringement."); <u>Korzeniewski v. Sapa Pho Vietnamese Rest., Inc.,</u> No. 17-CV-5721-MKB-SJB, 2019 U.S. Dist. LEXIS 1901, at *17 (E.D.N.Y. Jan. 3, 2019) (finding the continued display of the copyrighted work as a factor to conclude the infringement was willful); <u>Prater Music v. Williams</u>, No. 87-0362-CV-W-6, 1987 U.S. Dist. LEXIS 13979, at *8 (W.D. Mo. Nov. 3, 1987) ("Where a defendant continues to infringe upon copyrights despite repeated warnings, courts have found defendant's conduct to be willful."). As of the date of this filing, the Work is ***still published*** on Defendant's website, webpage, and/or social media.

In addition to its default, Defendant's willfulness is further demonstrated by the inclusion of a copyright disclaimer on its website ("Copyright © 2023 Annadele's Plantation") – indicating that Defendant understands the importance of copyright protection/intellectual property rights and is actually representing that it owns each of the photographs published on its websites. <u>See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC</u>, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the

Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). Defendant clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

The above demonstrates that Defendant had actual knowledge, or at least acted with reckless disregard, of  the fact that its conduct infringed upon Plaintiff's exclusive copyrights in the Work.  Accordingly, Defendant's default and the well-pled facts of the Complaint, which are admitted by Defendant's default, establish that Defendant's infringement of the Work was willful and deliberate.

## IV.    Plaintiff's Damages

### A.    *Actual Damages*

Pursuant to 17 U.S.C. § 504(b), a "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement." Actual damages include "…lost profits and 'reasonable royalty rates,' or what a willing buyer would have been reasonably required to pay a willing seller as a licensing fee for the actual use of the copyrighted material by the infringers." MGE UPS Sys. v. GE Consumer & Indus. Inc., 622 F.3d 361, 366 (5th Cir. 2010). A copyright owner may also seek 'any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.' 17 U.S.C. §

13

504(b). <u>Id</u>.

The copyright owner may also recover the fair market value of a license authorizing the defendant's use. <u>Straus v. DVC Worldwide, Inc.</u>, 484 F. Supp. 2d 620, 648 (S.D. Tex. 2007) (citing <u>On Davis v. The Gap, Inc.</u>, 246 F.3d 152 164-68 (2d Cir. 2001) (holding that a reasonable license fee--measured by the fair market value of a license authorizing the defendant's use--may be an appropriate measure of actual damages)). "Proof of industry practice 'inarguably is crucial to the estimation of actual damages.'" <u>Id</u>. Thus, a copyright holder's actual damages are determined by what a willing buyer would have been reasonably required to pay a willing seller for using. <u>Id</u>.

As set forth above and in the declaration of Rebecca Jones (Plaintiff's Secretary), Plaintiff exclusively operates on a subscription basis whereby it provides access to its library at a minimum of $999.00 per month (depending on the total number of end-users allowed access to the photographs) with a minimum twelve (12) month contract commitment (i.e., a licensee must pay at least $11,988.00 for access to any of Plaintiff's photographs for anywhere from 1 day to 1 year). Plaintiff does not license individual photographs as doing so greatly diminishes the value of Plaintiff's subscription model. Plaintiff offers semi-exclusivity to its licensees – Plaintiff knows exactly what ad agencies, grocery stores, etc. have access to its library and can assure its customers that a competitor down the street will not be using the same photograph(s) in its own weekly ads, circulars, internet marketing, etc. Plaintiff's customers often spend tens (if not hundreds) of thousands of dollars publishing weekly ads and developing marketing campaigns to advertise their products/services.

Because Plaintiff markets its photographic library on the basis of its exclusivity, the copying and publishing of individual photographs by non-licensees greatly reduces the value of Plaintiff's library. Plaintiff employs multiple full-time employees to locate and identify such

nonauthorized uses in an effort to ensure exclusivity to Plaintiff's licensees.  Plaintiff incurs these expenses (payroll etc.) to protect the integrity of its library.

Plaintiff's library of photographs was created over a 15 – 20 year period of time (with new creative works being made through the present date).  Plaintiff has employed professional staff photographers and likewise utilizes other professional photographers (on a work-for-hire basis), all of which specialize in high-end product/food photography.  All of these photographers are provided specific instructions with respect to Plaintiff's vision/overall composition requirements – namely, that food/product photography should result in images/meals accessible to the general public that an average family could prepare for a meal.  For any image (including the Work), Plaintiff's photographers spend hours using specialized lighting/equipment and take dozens (if not hundreds) of images before identifying 1 – 2 for inclusion in Plaintiff's library.  For any given photograph, Plaintiff then has costs associated with post-processing the image in specialized editing software such as Adobe Photoshop, Adobe Lightroom, and/or other programs so that the desired end-look of the photograph can be achieved, for their proper use in print and digital media advertising.

When Plaintiff's staff discovers an existing (i.e., published and available for viewing on the internet) infringement of one of its photographs, Plaintiff creates an infringement notice on the date of discovery or within 1 – 2 days thereafter.  The infringement notice identifies the date of discovery, displays the subject photograph, and displays a screenshot of the infringer's alleged use together with a website URL (if available) where the infringement is located.  A true and correct copy of Plaintiff's infringement notices with respect to the Work at issue in this lawsuit are attached to the Jones Decl.

The screenshot of Defendant's website, webpage, and/or social media shows that the Work was displayed and/or published by Defendant at least as of August 24, 2021 and still

currently remains displayed and/or published on Defendant's website, webpage, and/or social media (https://www.facebook.com/annadelesplantation/photos/4399819490079878). Defendant's failure to participate in this lawsuit has limited Plaintiff's ability to conduct discovery to fully discover the extent of its infringement and/or the exact date on which the Work was uploaded to Defendant's website, webpage, and/or social media.

For each year that Defendant published the Work, Plaintiff would be owed an annual license fee of (at minimum) $11,988.00.  Here, it is known that the Work was published at least as of August 24, 2021 and that it remains published by Defendant currently.  Given the above, the fairest beginning measure of Plaintiff's actual damages in this case is the $11,988.00 annual cost for licensing any image from Plaintiff's library multiplied by the number of years of use.  As such, Plaintiff believes its actual damages are equivalent to a 3-year licensing period – (a) August 24, 2021 – August 23, 2022; (b) August 24, 2022 – August 23, 2023 and (c) August 24, 2023 – present date (as Plaintiff does not prorate its work).   This amounts to a total of **$35,964.00** ($11,988 x 3 years of use).

In Prepared Food Photos, Inc. f/k/a Adlife Marketing & Communications Co., Inc. v. Patriot Fine Foods LLC, the $11,988.00 license was found to be a useful tool to properly calculate Plaintiff's damages.

> Here, Plaintiff provides access to its library at a price $999.00 per month with a minimum twelve-month contract commitment, meaning, a licensee must pay $11,988 for access to any of Plaintiff's photographs for any amount of time within a one-year period. (DE 13, Ex. A. ¶¶ 4–5). Plaintiff has numerous clients who pay this annual subscription fee. (*Id.* ¶ 4). While that demonstrates that licensors have indeed licensed its library on an annual basis for $11,988, it is unclear whether any licensor has paid that amount to utilize a single photograph in the library. Nevertheless, I find $11,988 to be a useful proxy given the below-described difficulties in calculating with precision Plaintiff's actual damages.

Prepared Foods Photos, Inc. v. Patriot Fine Foods LLC, No. 21-82129-CV, 2022 U.S. Dist.

LEXIS 205649, at *10 (S.D. Fla. Mar. 22, 2022).  The same analysis was adopted by a multitude

of other courts to subsequently consider the issue of Plaintiff's damages based on the facts before

those courts.  See, e.g. Prepared Food Photos, Inc. v. 193 Corp., No. 1:22-cv-03832, 2022 U.S.

Dist. LEXIS 205690 (N.D. Ill. Sep. 21, 2022) (awarding Plaintiff $35,964.00 in actual damages,

representing the $11,988.00 annual license fee x 3 years of usage of pre-registration usage of a

single photo; Prepared Food Photos, Inc. v. Miami Beach 411 Corp., No. 22-23197-CIV-

ALTONAGA/Damian, 2022 U.S. Dist. LEXIS 216003 (S.D. Fla. Nov. 28, 2022) (awarding

Plaintiff $35,964.00 in actual damages, representing the $11,988.00 annual license fee x 3 years

of usage of a single photo); Prepared Food Photos, Inc. v. Fat Daddy Co., No. 22-61671-CIV-

SINGHAL, 2022 U.S. Dist. LEXIS 216004 (S.D. Fla. Nov. 29, 2022) (awarding Plaintiff

$23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use

with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Perry Wings Plus, Inc., No.

22-CV-61883-RAR, 2022 U.S. Dist. LEXIS 227304, at *24 (S.D. Fla. Dec. 19, 2022) (awarding

$71,928.00 in statutory damages, representing the $11,988.00 annual license fee for a 3-year use

with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Silver Star of Brooklyn /

Brooklyn's Best Inc., No. 1:22-cv-04196-WFK-CLP, 2023 U.S. Dist. LEXIS 22037 (E.D.N.Y.

Jan. 23, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual

license fee for  3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v.

Chi.-Mkt.-Distrib., Inc., Civil Action No. 1:22-cv-03299-CNS-MEH, 2023 U.S. Dist. LEXIS

88407 (D. Colo. May 19, 2023) (awarding Plaintiff $35,964.00 in actual damages, representing

the $11,988.00 annual license fee x 3 years of usage of a single photo); Prepared Food Photos,

Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676 (S.D.N.Y.

May 25, 2023) (awarding Plaintiff $71,928.00 in statutory damages, representing the $11,988.00

annual license fee for  3-year use with a 2x multiplier applied thereto); Prepared Food Photos,

Inc. v. Shadowbrook Farm LLC, No. 1:22-CV-00704 (LEK/ATB), 2023 U.S. Dist. LEXIS 110171 (N.D.N.Y. June 27, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. WaDaYaNeed, LLC, No. 1:22-CV-01270 (LEK/ATB), 2023 U.S. Dist. LEXIS 110993 (N.D.N.Y. June 28, 2023) (awarding Plaintiff $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for a 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Exec. Dining Club, Inc., No. 22-cv-9446 (ER), 2023 U.S. Dist. LEXIS 99676, at *2 (S.D.N.Y. May 25, 2023) (awarding $71,928.00 in statutory damages, representing the $11,988.00 annual license fee for 3-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. Mikey's Famous Marinades Corp., No. 23-CV-1484 (JMA) (AYS), 2023 U.S. Dist. LEXIS 132222 (E.D.N.Y. July 31, 2023) (awarding $23,976.00 in statutory damages, representing the $11,988.00 annual license fee for 1-year use with a 2x multiplier applied thereto); Prepared Food Photos, Inc. v. New Kianis Pizza & Subs, Inc., No. 1:23-CV-926-JRR, 2024 U.S. Dist. LEXIS 52023 (D. Md. Mar. 25, 2024) (rejecting report & recommendation to award $1,000.00 in statutory damages and instead awarding $47,952.00 in statutory damages, representing the $11,998.00 annual license fee for 2-year use with a 2x multiplier applied thereto).

Defendant's inaction and refusal to participate in this lawsuit suppressed the information necessary to fully calculate Plaintiff's actual damages.  Similarly, Defendant's refusal to cooperate in this lawsuit has prevented Plaintiff from discovering any profits received by Defendant that would be recoverable pursuant to 17 U.S.C. § 504(b) in addition to Plaintiff's actual losses.  To establish Defendant's profits subject to disgorgement under § 504(b), a "copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to provide his or her deductible expenses and the elements of profit

attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b).  Defendant solely controls all information concerning its gross revenue related to its infringing uses of the Work, and it has stymied Plaintiff's ability to present that evidence to the Court.

In view of the foregoing, actual damages are insufficient due to Defendant's refusal to appear and participate in discovery, and Plaintiff thus elects to seek an award of statutory damages for Defendant's willful infringement of Plaintiff's copyrighted Work.

### B.      Statutory Damages are Appropriate for Defendant's Willful Copyright Infringement

17 U.S.C. § 504(c)(2) provides that, "[i]n a case where the copyright owner sustains the burden of proving, and the court finds, that infringement was committed willfully, the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." "Merely proving willfulness does not automatically entitle a copyright holder to the statutory maximum. The Court retains broad discretion to determine an appropriate damages figure in each case."  AF Holdings LLC v. Bossard, 976 F. Supp. 2d 927, 930 (W.D. Mich. 2013).

Where (as here) willful infringement has occurred, courts will generally award 3x – 5x the lost licensing fees.  See, e.g. Nicholl v. Sec. Studies Grp., Civil Action No. 1:21cv0563 (TSE/JFA), 2022 U.S. Dist. LEXIS 95811, at *11 (E.D. Va. Mar. 25, 2022) ("In cases of knowing and deliberate infringement, it is common practice to award more than the statutory minimum and more than the infringer would have paid in licensing fees. An award equal to five times the typical licensing fee is also more likely to deter future copyright infringement than an award of the licensing fees alone."); Broad. Music, Inc. v. Prana Hosp'y, Inc., 158 F. Supp. 3d 184, 199 (S.D.N.Y. 2016) ("[C]ourts in this Circuit commonly award, in cases of non-innocent infringement, statutory damages of between three and five times the cost of the licensing fees the defendant would have paid."); Broad. Music, Inc. v. N. Lights, Inc., 555 F. Supp. 2d 328, 332

(N.D.N.Y. 2008) ("[T]o put infringers on notice that it costs less to obey the copyright laws than to violate them, a statutory damage award should significantly exceed the amount of unpaid license fees. As such, courts often impose statutory damages in an amount more than double unpaid licensing fees where the infringement was not innocent.").

In cases of non-willful infringement, statutory damages may be awarded up to $30,000.00 resulting from the infringement of the copyrighted Work. See 17 U.S.C. § 504(c)(1). However, as discussed above, Defendant's conduct – as well as its decision not to defend against Plaintiff's claim – demonstrates that its conduct is willful.

> Had Plaintiff been able to conduct discovery and gather information on the scope of Defendant's infringement, actual damages would have likely been greater than the reasonable licensing fee for the Work. Here, doubling $11,988 will appropriately account for the circumstances surrounding this infringement and the need for deterrence. Defendant's declination to participate in this litigation impeded the court's ability to calculate the total extent of Plaintiff's actual damages, including Defendant's profits. Defendant likely profited to some degree from its unauthorized use; Plaintiff alleges that Defendant made commercial use of the Work for at least one year, advertising the sale of "USA Prime Angus London Broil" on its website for $9.99 per pound. (DE 1 ¶¶ 15, 17). Further, as described above, Defendant's conduct was willful. And "deterrence of future violations is a legitimate consideration" because "defendants must not be able to sneer in the face of copyright owners and copyright laws." *Cable/Home Commc'n Corp.*, 902 F.3d at 851 (internal quotation omitted). The need to deter future violations is an especially appropriate consideration here, given Defendant's default.

Patriot Fine Foods LLC, 2022 U.S. Dist. LEXIS 205649, at *12-13. The same facts as in Patriot Fine Foods apply to this present case. Plaintiff was unable to conduct discovery or gather information about the extent of Defendant's use of the Work/profits derived therefrom. Plaintiff's licensing structure is a strong proxy for calculating damages. Likewise to Judge Middlebrooks' finding in Patriot Fine Foods, and given the circumstances of the instant case,

Plaintiff submits that an award of statutory damages in the amount of ***$71,928.00*** ($35,964.00 x 2) under 17 U.S.C. § 504(c)(2) is appropriate to compensate Plaintiff for the damages suffered, to create a strong disincentive against infringers intentionally hiding the profits from their infringing conduct in the hope of earning more than they can be held accountable for in actual damages, and to deter future violations of copyright law.  Plaintiff requests the Court to apply the same multiplier Judge Middlebrooks applied in <u>Patriot Fine Foods</u>, wherein his honor doubled the actual damages (the one annual period of use) to account for Plaintiff's inability to conduct discovery and to deter future violations.

Even assuming, arguendo, that the Court is not convinced of the Plaintiff's actual damages, it is well within the Court's discretion to award substantial damages to the Plaintiff upon a finding of willfulness. For example, in <u>Corson v Brown Harris Stevens of the Hamptons, LLC</u>, the court found that willfulness entitled plaintiff to the enhanced statutory damages provided by 17 U.S.C. § 504(c)(2) (notwithstanding that the court found the plaintiff proved $0.00 in actual damages):

> So first the main issue was whether defendant's infringement was willful. I find here willfulness entitles plaintiff to the enhanced statutory damages provided by 17 U.S.C. Section 504(c)(2). The standard for willful infringement is not only knowledge on the defendant's part that what it did was infringement but also reckless disregard of the practice of protecting creativity, the very purpose of copyright. When the plaintiff can demonstrate, either directly or through circumstantial evidence, that defendant had knowledge that its actions constituted infringement, or recklessly disregarded that possibility, enhanced statutory damages for willful copyright infringement under 17 U.S.C. Section 504(c)(2) are appropriate.
>
> Plaintiff successfully proved that her photograph was copyright protected. It's clear that defendant, as a sophisticated business, knew there was copyright involved and did nothing to check those rights or to clear permission to reprint from the photographer.
>
> I find that the infringement was willful, and I find that the conduct of indifference to the rights of others was egregious and that the

statutory damages should be $25,000. There were no actual damages.

Corson v. Brown Harris Stevens of the Hamptons, LLC, 2018 U.S. Dist. LEXIS 248214, at *8 – 9 (S.D.N.Y. Jan. 24, 2018). Corson was a fully litigated case in which, though the Judge found that plaintiff proved $0.00 in actual damages, a finding of willfulness permitted statutory damages to be awarded, as "The Supreme Court instructs that the statutory rule formulated after long experience not merely compels restitution of profit and reparation from injury but also a desire to discourage wrongful conduct." Corson (referencing F.W. Woolworth Co. v. Contemporary Arts, Inc., 344 U.S. 228, 233 (1952)).

**V.    Entry of a Permanent Injunction is Appropriate**

Pursuant to 17 U.S.C. § 502(a), "[a]ny court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 USCS § 502. Injunctions are regularly issued pursuant to Section 502 because "the public interest is the interest in upholding copyright protections"; and courts also regularly issue injunctions as part of default judgements. Arista Records, 298 F. Supp. 2d at 1314 (entering permanent injunction against Defendants with respect to plaintiff's copyrighted work, including plaintiff's work to be created in the future).

As established by the well-pled facts of the Complaint and admitted by Defendant's default, this Court has proper jurisdiction over this action. Defendant's conduct has caused, and any continued infringing conduct will continue to cause irreparable injury to Plaintiff, such that Plaintiff has no adequate remedy at law. For example, the ability of Defendant to use Plaintiff's work for its own commercial benefit without compensation to Plaintiff greatly impairs the market value of the work, since others competing in that business or in related business areas,

will not want to obtain a license to Plaintiff's works if it is already associated with a competing business; and potential licensees of Plaintiff will not want to pay license fees to Plaintiff if they see other commercial enterprises taking and using Plaintiffs photographs for their own commercial purposes without paying any fee at all.

Accordingly, Plaintiff requests the Court to enter a permanent injunction against Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, vendors and assigns, and all those in active concert and participation with Defendant, prohibiting them from (a) directly or indirectly infringing Plaintiff's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop, or manufacture any works derived or copied from Plaintiff's copyrighted photograph or to participate or assist in any such activity; and (b) directly or indirectly reproducing, displaying, distributing, otherwise using, or retaining any copy, whether in physical or electronic form, of any copyrighted photograph owned by Plaintiff.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests the Court to enter final default judgment against Defendant; award Plaintiff **$71,928.00** for Defendant's infringement of the Work, permanently enjoin Defendant from infringing activities; and for any other relief the Court deem just and proper.

Dated: May 6, 2024                    GIEGER, LABORDE &
                                      LAPEROUSE, LLC
                                      701 Poydras Street
                                      Suite 4800
                                      New Orleans, LA 70139
                                      Tel: 504.561.0400
                                      jbaay@glllaw.com

                                      By: /s/ John E. W. Baay II___
                                            John E.W. Baay II
                                            LA Bar Number 22928

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which will electronically serve all counsel of record.  I further certify that on May 6, 2024, the foregoing document and all attachments thereto were served via US Mail to: Annadele, Inc. d/b/a Annadele's Plantation, c/o Arthur J. Picone, 4420 Belle Dr., Metairie, LA 70006 and Annadele, Inc. d/b/a Annadele's Plantation, 71518 Chestnut Street, Covington, LA 70433.

                                      /s/ _John E. W. Baay II__
                                      John E.W. Baay II, Esq.